UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ARLANDO BOYD, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:05-CV-0581 AGF |
| | ) |
| MICHAEL MURPHY, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on the petition of Missouri state prisoner Arlando Boyd for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, habeas relief shall be denied.

## BACKGROUND

On September 6, 2002, Petitioner pled guilty in Missouri state court, to one count of forgery, pursuant to a plea agreement with the State. (Resp't Ex. A.) Petitioner was sentenced to five years' imprisonment in the custody of the Missouri Department of Corrections ("MDOC"). Execution of the five-year sentence was suspended by the court at the suggestion of the State, in accordance with the terms of a plea agreement, and Petitioner was placed on probation for a term of five years. (Resp't Exs. A, D at 2-4.) The terms of Petitioner's probation included a special provision that he pay a total of $12,000 in restitution in the amount of $250 per month, beginning on December 1, 2002.

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

(Resp't Ex. D at 10.)

On February 25, 2003, the State moved to revoke Petitioner's probation for failure to pay any restitution, as ordered. (Pet. Ex. 2.) A probation hearing was scheduled for April 4, 2003, before the sentencing judge, but Petitioner did not show up for the hearing and a warrant was issued for his arrest. http://www.courts.mo.gov/casenet, Case No. 2102R-01215-01. Petitioner was taken into custody on July 3, 2003. (Resp't Ex. E.) On July 30, 2003, the MDOC Board of Pardon and Parole ("MBPP") issued a probation violation report, citing Petitioner for violating two conditions of his probation, including his failure to pay restitution.[2] Id. A probation revocation preliminary hearing was not scheduled at that point, in part to allow MBPP time to complete a factual investigation related to Petitioner's assertions. Id. After MBPP's completion of its factual inquiry, a second Field Violation Report dated August 8, 2003 ("August 8 Report"), set forth MBPP's factual findings. Id.

The August 8 Report stated that although Petitioner claimed to have been reporting to his previous probation officer, the Probation Office's records indicated that between January 10, 2003, and June 30, 2003, Petitioner reported only twice – on February 5 and February 12, 2003. The August 8 Report also noted that Petitioner claimed that he "had been seeking employment through Employment Connection, and had been confined for a

---

[2] The July 30, 2003 probation violation report is not in the record before the court. An August 8, 2003 Field Violation Report, however, makes reference to the July 30 report's citation of Petitioner for violating two terms of his probation. (Resp't Ex. E.)

significant period of time in various jurisdictions due to bench warrant arrests between 1-10-03 and 7-3-03," but that the MBPP investigation found that Employment Connection had no record of Petitioner participating in their program, and that a "REJIS [Regional Justice Information Service] record check" indicated that Petitioner had not been arrested between January 10 and July 3, 2003, when he was taken into custody.  Id. Finally, the August 8 Report recommended the continuation of Petitioner's probation with work release.  Id.

On September 4, 2003, a probation revocation hearing was held before the sentencing judge.  At the outset, Petitioner's attorney stated she had an announcement on behalf of her client:

> Mr. Boyd is prepared today to admit the violation of his probation for failure to pay restitution with the understanding that his probation can and would be revoked by admitting a violation and his previously imposed sentence would be executed.
>
> Mr. Boyd has asked if he could make a statement to the Court prior to the conclusion of this hearing or this announcement. . . . [The Court indicated that would be granted.]
>
> And it is also our understanding that Mr. Boyd is to receive 30 days for good time credit in addition to any of the jail time he has served in this case.

(Resp't Ex. D at 12.)

In response to the Court's inquiry as to the State's recommendation, the prosecutor stated, "It is for revocation and the Court to sentence [Petitioner] to serve five years in the [MDOC]," with 30 days credit.  Id.  The court examined Petitioner, who acknowledged

that he authorized his attorney to "waive [his] right to the probation matter hearing and indicate that [he] violated condition of probation No. 10.3, restitution." Petitioner further confirmed his understanding that he might be sentenced that day, and confirmed his understanding that "the State's agreement is for your waiver and admission for 30 days credit for time spent on probation." Id. at 14.

The court accepted Petitioner's waiver, and based on Petitioner's admissions, found that Petitioner had violated the "conditions of probation," and revoked Petitioner's probation, as follows:

> The Court: Okay. The court accepts the Defendant's waiver and based on the admissions of the Defendant finds that the Defendant has violated said conditions of probation. I think, Mr. Boyd, just to be clear you failed to pay restitution as ordered, is that correct?
>
> Petitioner: Yes, sir.
>
> The Court: Okay. Probation granted herein is revoked.

Id. at 14.

The court then gave Petitioner the opportunity to address the court. Petitioner stated that although he was not employed when restitution was initially ordered, he did get a job in December 2002 and that during that month he called his probation officer to let her know that although he had missed his first restitution payment on December 1, 2002, he was working and trying to earn overtime. Petitioner stated that his probation officer agreed to give him "another date" but "when she showed up she said I was violated for not showing up." Id. at 15-16. Petitioner stated that after he "was violated,"

he "was incarcerated . . . lost [his] job [and] was released, but . . . didn't have a job at the time." Further, he told the court that he reported to his probation officer upon his release from incarceration and that "I really didn't have time to really make my payment as I was supposed to." At this point the court interrupted Petitioner and pointed out that in addition to the failure to pay restitution, Petitioner had failed to appear at the previous hearing. Petitioner claimed that he had never received the summons issued in response to the State's motion to revoke probation, and that if he had he would have shown up in court. Id. at 16. The Court said "Okay," and asked Petitioner if he had anything else, to which Petitioner responded, "No, Your Honor." Id. at 17.

The court then asked Petitioner, his counsel, and the prosecutor whether any of them knew any legal reason why the court should not "now execute the sentence against" Petitioner. Each individually responded that she/he did not and the court executed the previously imposed sentence of five years' imprisonment. Petitioner was granted 30 days good time credit against the sentence for time he had spent on probation between September 7, 2002, and October 7, 2002. (Resp't Ex. A & Ex. D at 14, 17.) Lastly, the court examined Petitioner regarding the efficacy of his counsel's representation. Based upon Petitioner's representations that he was satisfied with his attorneys' performances, the court found no probable cause to believe that Petitioner had received ineffective assistance of counsel. (Resp't Ex. D at 20.) The court completed, and Petitioner signed, a Probation Revocation Hearing and Judgment form which indicated in check-box format that Petitioner waived the hearing of the matter and admitted violation of a condition of

his probation. The form further stated that "[a]fter considering the alternatives" the court ordered Petitioner's probation revoked and the previously imposed sentence executed. (Resp't Ex. A.)[3]

On February 11, 2004, Petitioner filed a motion for post-conviction relief under Missouri Supreme Court Rule 24.035 in which Petitioner claimed ineffective assistance of counsel, in that his defense counsel failed to investigate and discover evidence which would have negated the mens rea to commit the crime of forgery; and violation of his constitutional rights by the failure of the trial court to consider alternative sentencing options and to make a record that Petitioner willfully violated the terms of his parole. (Resp't Ex. F.) Petitioner prayed for an order granting him work-release or alternatively reinstating his status as probationer. Id.

While his Rule 24.035 motion was pending, Petitioner filed a petition for state habeas corpus relief in the Missouri circuit court on June 29, 2004, claiming that his constitutional rights were violated by the failure of the sentencing court to find that Petitioner was at fault for his inability to pay restitution and the failure of the sentencing court to find that no alternative sentencing options existed, as required by Bearden v. Georgia, 461 U.S. 660 (1983) (establishing substantive due process right not to have probation revoked due to inability, despite reasonable efforts, to pay fines or restitution, unless alternative punishments are inadequate). (Resp't Ex. G.) The court summarily

---

[3] On this form, the sentencing court noted the date of the August 2003 Probation Violation Report as August 18. This appears to be an error.

dismissed the state habeas petition without prejudice on July 2, 2004.  Id.

Petitioner next petitioned for a writ of habeas corpus in the Missouri Court of Appeals, on July 14, 2004, asserting the same grounds as in his initial petition.  (Resp't Ex. H.)  This petition was denied by summary order on August 26, 2004.  Id.  Finally, on September 27, 2004, Petitioner petitioned the Missouri Supreme Court for a writ of habeas corpus, asserting the same grounds and stating that he was "not at fault for the inability to pay," that there were alternatives presented to the sentencing court, and that he was being "illegally and improperly restrained of his liberty due to the revocation court violating his probation based solely upon his indigency, at [no] fault to Petitioner, without affording him reasonable alternatives as recommended, all in direct violation of [his] rights to Due Process and Equal Protection of the Law . . . ."  (Pet. Ex. A.)  On November 23, 2004, the Missouri Supreme Court summarily denied Petitioner's petition.  (Resp't Ex. C.)   Petitioner's Rule 24.035 motion was voluntarily dismissed by Petitioner on December 10, 2004.  (Resp't Ex. F.)

Petitioner filed the instant action on March 23, 2005.[4]  He claims that the

---

[4] Petitioner initially filed this action in the United States District Court for the Western District of Missouri, Central Division.  The case was transferred to this court on April 11, 2005.  (Doc. #5.)  The petition was signed by Petitioner on March 23, 2005.  A federal habeas petition is deemed filed on the date the prisoner delivers it to prison authorities for mailing to the clerk of the court.  Nichols v. Bowersox, 172 F.3d 1068, 1077 (8th Cir. 1999) (en banc).  Absent evidence to the contrary, the date upon which Petitioner signed the petition is sufficient indicia of the date upon which he delivered the petition to prison authorities.  See United States v. Duke, 50 F.3d 571, 575 (8th Cir. 1995).

sentencing court violated his Due Process and Equal Protection rights by revoking his probation due to his indigence and inability to pay restitution, notwithstanding the existence of alternatives which were presented to the court.

Respondent argues that habeas relief should be denied because the Missouri Supreme Court's decision rejecting Petitioner's state habeas petition was not contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Respondent maintains that Petitioner's claim fails under <u>Bearden</u> because the facts set forth in the August 8 Report establish the inference that Petitioner "willfully chose not to pay restitution or seek legal ways to earn money to pay his restitution."

## **DISCUSSION**

### **Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus under 28 U.S.C. § 2254 cannot be granted unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision by a state court is "contrary to" clearly established law

of the Supreme Court if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that Court's precedent. Price v. Vincent, 538 U.S. 634, 640 (2003) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

A case cannot be overturned merely because it incorrectly applies federal law; the application must also be "unreasonable." Williams, 529 U.S. at 411; Colvin v. Taylor, 324 F.3d 583, 587 (8th Cir. 2003) (stating that under AEDPA, a writ of habeas corpus may not be granted "unless the relevant state court decision is both wrong and unreasonable"). The factual findings of the state courts also may be challenged in a § 2254 petition, but they are subject to "an even more deferential review." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001). Factual findings by the state courts "shall be presumed to be correct," a presumption that will be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As noted above, the state court decisions denying Petitioner's state habeas petitions were summary in nature. In this circuit, the "summary nature of a state court's decision does not affect the applicable standard of review under § 2254(d)(1)." Closs v. Weber, 238 F.3d 1018, 1020 (8th Cir. 2001) (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999)). A summary decision by the state appellate court is presumed to have been on the merits. Carter v. Bowersox, 265 F.3d 705, 712 (8th Cir. 2001) (citing Chambers v. Bowersox, 157 F.3d 560, 566 (8th Cir. 1998)). In such a case, the court's

focus "is on the result . . . ; the absence of reasoning is not a barrier to a denial of relief." Cf. Brown v. Luebbers, 371 F.3d 458, 467 (8th Cir. 2004) (applying AEDPA standard of review where state court decision did not fully address federal constitutional issues on the merits).

**Revocation of Probation**

"The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." Black v. Romano, 471 U.S. 606, 610 (1985) (citing Bearden, 461 U.S. at 666 & n.7). The decision to revoke probation involves an initial factual determination that the probationer violated a condition of probation, and a second determination as to whether the violation warrants revocation. Id. at 611 (citing Morrissey v. Brewer, 408 U.S. 471 (1972), and Gagnon v. Scarpelli, 411 U.S. 778 (1973)). Where the probation violation involves failure to pay restitution,

> a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay.

Bearden, 461 U.S. at 672. Thus, Bearden "recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or

- 10 -

restitution." Black, 471 U.S. at 611. Following this precedent, the Eighth Circuit has held that where a court revokes probation for a failure to pay restitution without determining whether the probationer had the means to pay or had made sufficient bona fide efforts legally to acquire the resources to pay, habeas relief is proper. See Martin v. Solem, 801 F.2d 324, 331-332 (8th Cir. 1986).

This court concludes that although the record does not reflect compliance by the sentencing court of the Bearden requirements,[5] habeas relief must nonetheless be denied

---

[5] Neither the transcript of the September 4, 2004 proceedings nor the Probation Revocation Hearing and Judgment form completed by the sentencing court indicates that the court made any inquiry or findings, once it found Petitioner to be in violation, regarding the reasons for Petitioner's failure to pay restitution, as required by Bearden. Furthermore, the record does not indicate why the court thought that alternatives to imprisonment would have been insufficient.

Although in Black, 471 U.S. at 616, the Supreme Court held, in the context of a non-Bearden case, that the revocation court need not explain why alternatives to incarceration were not selected, the Eighth Circuit requires that the record provide some "clarity to the court's reasons" for determining that nonpayment of restitution was willful and that alternatives to imprisonment would be insufficient, when using the Bearden analysis to revoke probation. See United States v. Stevens, 986 F.2d 283, 284 (8th Cir. 1993) (vacating district court's revocation of probation and remanding for further proceedings where district court merely stated, in the face of uncontroverted testimony of probationer's financial inability to meet restitution obligation despite diligent efforts, that it was unimpressed with probationer's reasons for non-payment, and the record did not indicate why alternatives to imprisonment would have been insufficient); Jackson v. Gill, 711 F. Supp. 1503, 1506, 1512 (W.D. Mo. 1989) (granting habeas petition where no evidence of any claimed violation was adduced at the revocation proceeding, and the revocation court failed to state in writing any of the reasons that it may have relied on for entering the revocation order and executing the previous sentence of imprisonment; quoting Schmeets v. Turner, 706 S.W.2d 504, 506-07 (Mo. App. Ct. 1986), for its acknowledgment of Bearden's holding "that due process requires that there be evidence and findings that the failure to pay restitution is the fault of the probationer . . . before probation . . . may be revoked"). Here, although the August 8 Report, which would

in this case because it is reasonable to find that Petitioner waived any claim to the very rights he now claims were violated. Just as a criminal defendant may waive his constitutional rights when pleading guilty, see, e.g., United States v. Michelsen, 141 F.3d 867, 871 (8th Cir. 1998), a probationer may waive the elements of due process owed to him at a probation revocation hearing and may waive the hearing altogether. Bilynsky v. Schneider, No. 00CV953 ERW/DDN, 2003 WL 22287355, at *4 (E.D. Mo. Aug. 19, 2003) (magistrate judge's report and recommendation reasoning that probationer's signature on waiver of hearing form, and transcript of examination by the court belied probationer's habeas claims that his waiver was involuntary), case dismissed as moot prior to adoption of Report and Recommendation.

At the hearing, Petitioner's counsel stated that Petitioner "is prepared today to admit the violation of his probation for failure to pay restitution" and that Petitioner understood that his admission could "and would" lead to the revocation of his probation and the execution of the previously imposed sentence. Petitioner's counsel also confirmed a further agreement whereby Petitioner would receive certain good time credit in addition to credit for any jail time served. During the court's examination, Petitioner affirmed that he had authorized his attorney to waive his "right to the probation matter

---

support a finding of willfulness, was in the record, the record is unclear as to whether the sentencing court considered Petitioner's ability and efforts to pay restitution before revoking his probation, or why alternatives to imprisonment would have been insufficient. As discussed below, however, the sentencing court here proceeded on Petitioner's admission to the violation and waiver of the hearing.

hearing," and he acknowledged that he understood that he "might be sentenced here today."  At the conclusion of the hearing, Petitioner and his counsel represented that neither of them knew any legal reason why the sentence against Petitioner should not be executed.  Finally, Petitioner's signature appears on the Probation Revocation Hearing and Judgment form filled out by the court.  The form indicates, in check-box format, that by signing the form Petitioner "hereby waives the hearing of this matter and admits violating condition(s) of probation numbered 10.3 – restitution . . . ."

The Court acknowledges that the record here could be read to suggest that Petitioner did not intend to waive all his applicable due process rights, but intended only to admit to the fact of violation, i.e., that he did not pay restitution, in expectation that the court would then make a determination under Bearden as to whether that violation was willful and whether an alternative to imprisonment would be sufficient.  A more plausible reading, however, is that Petitioner knowingly and voluntarily waived his due process right to have the court make a determination as to the willfulness of his probation violation, knowing that the result would be execution of his five-year sentence.  This is supported by Petitioner's counsel's acknowledgment that Petitioner's "previously imposed sentence would be executed" as a result of their announcement to the court, and the further agreement by both counsel as to good time credit.  The Court further notes that a finding of willfulness would have been fully supported by the August 8 Report.  As such, it was reasonable to proceed as the court did based on Petitioner's waiver.  This Court cannot grant relief under § 2254 where, as here, the state courts' adjudication of a

claim did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law [or] that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## CONCLUSION

The Court concludes that Petitioner is not entitled to habeas relief. The Court does not believe that reasonable jurists might find the Court's rejection of Petitioner's claims debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2253(c)(2). See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000) (setting forth the standard for issuing a certificate of appealability); Langley v. Norris, 465 F.3d 861, 862-63 (8th Cir. 2006) (same).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Arlando Boyd for habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of June, 2008.